**UNITED STATES of America,**

v.

**JOSEPH HEALTH AND BEAUTY SUPPLY, located at 3825 Broadway, New York, N.Y., Defendant.**

**No. 92 Civ. 6187 PNL.**

United States District Court, S.D. New York.

Oct. 14, 1992.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., Bart Van de Weghe, Asst. U.S. Atty., New York City, for U.S.

Scott H. Greenfield, Meyer & Greenfield, New York City, for defendant.

## MEMORANDUM AND ORDER

LEVAL, District Judge.

Claimant Jose Vargas moves for reconsideration of an order entered in the emergency motions part of this court on August 17, 1992, approving the seizure of the assets of Joseph Beauty Supply.

Magistrate Judge Sharon Grubin issued an ex parte warrant of seizure on June 29, 1992. Vargas moved to vacate the seizure before Judge Louis Stanton of this court, in a criminal action brought by the United States against Vargas (No. 92 Cr. 0589 (LLS)). On August 14, 1992, Judge Stanton vacated the order of seizure.

The same day, August 14, 1992, the Government instituted this in rem civil action for seizure and forfeiture, which was assigned to this judge. On August 17, 1992, the Government sought a probable cause determination in the civil forfeiture action in Part I (emergency motions) before Judge Louis Freeh, in this judge's absence. During the hearing, the Government agreed to modify its complaint to allege facts linking the defendant-in-rem to a scheme of mail fraud in violation of 18 U.S.C. § 1341. The Government argued that mail fraud constituted predicate "specified unlawful activity" as required by 18 U.S.C. § 1956. Judge Freeh found on August 17, 1992, that the seizure warrant in the civil action was properly issuable and could be executed.

On August 20, 1992, claimant Vargas moved before Judge Stanton for review of Judge Freeh's ruling. On August 31, 1992, Judge Stanton declined to rule because Judge Freeh's order had been issued in the civil forfeiture action, which was not before him. Claimant subsequently sought release of the seized property before this judge.

█ The Government has demonstrated that there is statutory authority for seizure of Joseph Beauty Supply. The seizure was made under authority of 18 U.S.C. § 981(a)(1)(A) which permits forfeiture of "Any Property, real or personal, involved in a transaction or attempted transaction in violation of ... section 1956 ... of this title...." Seizures under § 981 are subject to a showing of probable cause under § 981(d), in accordance with the customs laws relating to seizure, 19 U.S.C. § 1602, 1615.

Section 1956(a)(1)(A)(i) provides:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity ... with the intent to promote the carrying on of specified unlawful activity ... shall be sentenced to a fine....

Thus, the elements of the offense are (1) knowledge that the property involved in a financial transaction represents the proceeds of unlawful activity, (2) that the defendant conducted a financial transaction, (3) that the financial transaction involved the proceeds of "specified unlawful activity," (including mail fraud in violation of 18 U.S.C. § 1341), and (4) that the defendant intended to promote the specified unlawful activity.

The Government shows satisfaction of these elements as follows. It has shown that mail fraud in violation of § 1341 was committed through a scheme whereby Medicaid recipients, with fraudulent intent, would obtain prescription drugs from pharmacies, and cause the mails to be used to procure Medicaid reimbursement by the pharmacies. Then, instead of using the medications as intended by Medicaid, the Medicaid recipients would then sell these

medications into a chain of illegal commerce.

The Government submissions show probable cause to believe that the in rem defendant Joseph Beauty Supply and the Claimant Jose Vargas engaged in "financial transactions" (which are defined by § 1956(c)(3) and (4) to include a "purchase" or "sale" that involves "movement of funds ... affecting interstate commerce") in that they purchased and resold medications that were in the illegal stream of commerce described above, that these medications were the "proceeds" of mail fraud, and that by engaging in these purchases and sales they intended to promote the mail fraud, by creating a market for such fraudulently diverted medications.

The Government has thus demonstrated that, upon a showing of probable cause, seizure of the assets of Joseph Health and Beauty Supply was within the standards of § 981, incorporating § 1956 and § 1341. Furthermore, although there are certain weaknesses in the Government's showing of probable cause (which were discussed in the record of the hearing on October 9, 1992), I agree with Judge Freeh that the Government has succeeded in showing probable cause.

 There is one exception—the seized bank accounts. The Government has failed to show probable cause for their seizure. The only showing that the bank accounts were "involved" in transactions that violated § 1956 is the assertion in the Government's affidavit that a prescription drug wholesaler in Puerto Rico wrote at least two checks to Joseph Beauty Supply that were returned for insufficient funds. The Government argues a reasonable inference can be drawn that the checks passed through the seized bank accounts. The inference does not follow. There are other means of negotiating checks than through bank accounts. Moreover, even if the checks did pass through a bank account in the control of Joseph Health and Beauty Supply or Vargas, the Government has not shown probable cause that the checks passed through either of the seized accounts, much less both of them. Thus, the seizure of the bank accounts was not lawful.[1]

In *United States v. All Assets of Statewide Auto Parts,* 971 F.2d 896 (2d Cir. 1992), the Court of Appeals directed that absent an extraordinary situation, the district courts should "exercise their discretion to stay civil forfeiture proceedings pending the completion of related criminal proceedings against the claimants." The Court of Appeals recommended that "whenever possible [the district court] should favor less drastic measures, such as occupancy agreements, bonds, receiverships, lis pendens, or other means for preserving the status quo ante seizure" until adjudication of the underlying questions. This ruling by the Court of Appeals was motivated by the draconian "finality" of harm that can result from seizure orders, even though they are but provisional remedies, sometimes obtained ex parte, and require only a showing of probable cause, regardless of the existence of rebuttal or impeaching evidence. Solely on the basis of probable cause as to the existence of illegal transactions, entire legitimate businesses may be shut down, their bank accounts frozen, and their legitimate operating cash seized.

At the Part I hearing, Judge Freeh considered the arguments advanced by claimant based on *Statewide Auto Parts.* Judge Freeh decided that the public interest in preventing illegal distribution of prescription medicine outweighed other factors in the record before him, making pretrial seizure appropriate. I believe that ruling was within Judge Freeh's discretion under *Statewide Auto Parts,* and I therefore decline to vacate Judge Freeh's seizure order as to the leasehold of Joseph Health and Beauty Supply.

---

1. In addition, the fact that a bank account was used on a certain date to further illegal activity does not necessarily mean that all of the funds found in that account on a later date are forfeitable as funds "involved in" unlawful activity.

*See United States v. 448,342.85,* 969 F.2d 474 (7th Cir. 1992). Because I find that the seizure of these accounts was unlawful, I do not reach this issue.

Notwithstanding my denial of the motion to vacate Judge Freeh's order permitting seizure, there is a reasonable question as to (1) whether the court should require the Government to permit the claimant to occupy the seized premises for the conduct of lawful business during the pre-trial period;[2] and (2) whether the seizure of all of the cash funds found at Joseph Health and Beauty Supply went beyond what was attributable to lawful activity.

See also 807 F.Supp. 320.

Claimant is invited to make prompt submissions to support a showing that he should be allowed to occupy the seized premises pending trial, *see Statewide Auto Parts, supra,* and that the seizure of all cash funds was excessive, *see U.S. v. $448,- 342.85, supra* (discussing appropriate tracing presumptions) *United States v. Banco Cafetero Panama,* 797 F.2d 1154 (2d Cir. 1986) (same).

### CONCLUSION

The Government is ordered to release immediately the bank accounts seized. Otherwise, claimant's motion for reconsideration of Judge Freeh's order is denied.

SO ORDERED:

**2.** The Government does not object to Vargas using the name of the business or to his having

its lawful inventory returned to him. The Court therefore does not address these issues.